**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**
Case No. 10-20426-CIV-GRAHAM/TORRES

CONSENT CASE

CARLO DEMARIA, JIMMY DEMARIA,
MAURO MARCHIONI, et al.,

     Plaintiffs,

vs.

GISBEX CLEARING CORPORATION,
S.A., et al.,

     Defendants.

_____

**SECOND AMENDED COMPLAINT**

     Plaintiffs, Carlo Demaria, Jimmy Demaria, Mauro Marchioni, Giuseppe Demaria, and Municipal Web Portal Solutions, Inc. ("**Plaintiffs**"), by and through their undersigned counsel, file this Second Amended Complaint against GISBeX Clearing Corporation, S.A., Moneyline Brokers, David, Michael, and Robin Rushing (hereinafter collectively referred to as the "**Defendants**") and allege as follows:

**NATURE OF THE ACTION**

     1.    The present action is prepared to recover funds and personal property belonging to Plaintiffs; which property has been converted and, upon information and belief, has been fraudulently transferred to third parties who are under common

1

ownership and control with GISBeX Clearing Corporation, S.A. and Moneyline Brokers.

2.      Plaintiffs are Canadian residents who were solicited by Robin Rushing, acting on behalf of an unincorporated association known as Moneyline Brokers, for brokerage services in the purchase and/or sale of securities; which Moneyline Brokers has and continues to unlawfully operate within the United States.

3.      The basis of the present case involves an international securities brokerage platform which is purportedly headquartered in Costa Rica, although which securities brokerage services are marketed to and performed for the benefit of residents of Canada and the United States.

4.      Plaintiffs, who were solicited by Robin Rushing to use such brokerage services between June and December of 2008, had entered into a series of contracts with Moneyline Brokers and collectively deposited a total of 24,700,000 shares of the common stock of BRYN Resources, Inc.(**BRYN**"), a publicly traded company within the United States, and thereafter instructed the sale of approximately ten million of those shares.  Such deposits of shares were made with Moneyline Brokers and into nominees / entities which are under common ownership and/or control with Moneyline Brokers and are used to facilitate the unlawful trading platform.

5.      Between approximately March 12, 2009 and December 1, 2009, Plaintiffs, after having their account applications approved and having been granted access, either placed orders over the telephone with Robin, David, and Michael Rushing (the "**Rushing Defendants**") or logged onto the illusory trading platform of Moneyline Brokers and requested the execution of numerous trades in BRYN.  Such online platform resembles that of the website operated by licensed brokerage firms and, as such, misleads clients of Moneyline Brokers to believe that the services performed are lawful and that Moneyline Brokers has the requisite licensure to operate the trading platform.

6.      In connection with the execution of the trades, a scheme was devised whereby Moneyline Brokers, and/or those under common ownership and control, converted approximately thirteen million three hundred fifty thousand of Plaintiffs' unsold shares and approximately one million five hundred thousand dollars of the sales proceeds from prior sales of the BRYN shares.

7.      Accordingly, Plaintiffs have and will continue to suffer damages until their respective funds and securities are returned.

## PARTIES

8.      Plaintiffs Carlo Demaria, Jimmy Demaria, Mauro Marchioni, and Giuseppe Demaria are residents of Canada.

9.     Plaintiff Municipal Web Portal Solutions, Inc. is an entity incorporated and existing under the laws of the Province of Ontario.

10.    Defendant GISBeX Clearing Corporation, S.A., aka The Global Internet Stock Brokerage Exchange, Inc. ("**GISBeX**") is a corporation formed and existing under the laws of Costa Rica. GISBeX does not maintain a registered agent in the State of Florida, nor is legally authorized to conduct business within this State, although maintained mailing and/or office addresses at 7979 NW 21st Street, Suite SJO 5593, Miami, Florida 33122 and 4440 NW 73rd Avenue, Miami, Florida 33106.  GISBeX, while formed and operating in Costa Rica, provides channels of communication to the United States, directly or indirectly, by and through the instrumentality of interstate commerce.  In particular, GISBeX maintained web address at www.gisbex.com, provided customer support via email at info@gisbex.com, and even provided toll-free telephone customer service within the United States; which telephone number was (888) 944-7239.[1]

11.    Defendant Moneyline Brokers is represented to be a wholly owned subsidiary of GISBeX and, while initially operating as an unincorporated association, it incorporated under Costa

---

[1] References are made in the past tense as, since the filing of the original complaint in this matter, mailing addresses and telephone numbers for GISBeX and Moneyline Brokers have changed. Please see Exhibit "I" to this Second Amended Complaint.

Rican law under the name Luz Negra Escarcha, S.A.  Moneyline
Brokers is not registered as a broker-dealer with the U.S.
Securities and Exchange Commission ("**SEC**"), although conducts
operations in violation of state and federal registration
requirements as it collects fees and commissions for the
purchase and/or sale of securities.  Such transactions include
the purchase and/or sale of (i) U.S. stocks, corporate bonds,
mutual funds, and treasury notes and shares, (ii) Canadian
stocks, and (iii) foreign stocks and bonds.[2]  Moneyline
maintained telephone support within the United States, which
telephone number was (506) 290-8973, and also operated an office
from 816 West Francis Ave., Suite 121, Spokane, Washington
99205.

   12.    David K. Rushing, Michael Rushing, and Robin Rushing,
are residents of the State of Washington and operate as a link
to the international securities business described herein;
including employment as unlicensed representatives in the
purchase and/or sale of securities.  These individual defendants
utilize the mails and instrumentalities of interstate commerce
as they maintain office address at 816 West Francis Ave., Suite
121, Spokane, Washington 99205, accept mail correspondence on
behalf of all Defendants through their Spokane, Washington

---

[2] Attached as Exhibit "H" is the transactional fee schedule that
was provided through Plaintiffs' accounts.

address, and provided telephone access within the United States;
which number was (506) 326-4253.  In particular, Robin Rushing
would customarily accept telephone orders submitted by
Plaintiffs for the sale of the BRYN shares and David Rushing
would provide verbal trade confirmation to Plaintiffs during the
relevant time.  However, David and Michael Rushing would assist
Robin where trade orders would be made and she was not readily
available to take verbal instructions.

### NON-PARTIES

13.     Harold Bailey Gallison, Jr. is believed to be a
resident of the State of California and one of the primary
operators of Moneyline Brokers.

14.     Sandias Azucaradas JEM, S.A. ("**Sandias Azucaradas**"),
also believed to be operating under the name of or as an
affiliate of Sandias Azucaradas CR, S.A., is a Costa Rican
Corporation with address at Zapote Del Itan 300E 300N, San Jose,
Costa Rica.  Sandias Azucaradas is under common control with
GISBeX as it accepts and/or maintains custody of funds and/or
securities deposited; including that of Plaintiffs' stock
certificates.  Sandias Azucaradas utilizes the mails and
instrumentalities of interstate commerce as it accepts, on
behalf of Moneyline / GISBeX, wire transfers within the United
States.  Such funds are accepted by and through HSBC Bank USA,
N.A., with office location at 140 Broadway, New York, NY 10015,

and are subsequently transferred to Sandias Azucaradas'
beneficiary account with HSBC Bank, S.A. in the Republic of
Panama.  Sandias Azucaradas also operates as the nominee for
shareholders wishing to deposit securities in "street name" or
electronic form; which securities are under the control of and
traded by GISBeX.  Communications with Sandias are made through
David, Michael, and Robin Rushing, and the individual defendants
communicated via email with address of
office@sandiasazucaradas.com and telephone number of (506) 326-
4253.  David Rushing is also affiliated with Sandias and holds
his employment out as "process services".

    15.    Bastille Advisors, Inc. ("**Bastille**") is an entity
under common control with GISBeX and is held out to be the
"compliance" arm of Moneyline Brokers; including previous
involvement with the replacement of one of Plaintiffs' lost
stock certificates on September 22, 2009.  David Rushing
communicated on Bastille's behalf through email, which address
is office@bastilleadvisors.com, by telephone which number is
(702) 320-5913, and also by the mails; by and through the Las
Vegas address listed herein.  Bastille is a Nevada corporation
with principal office address of 2724 Otter Creek Ct 101, Las
Vegas, Nevada 89117.  Roger G. Coleman is listed as the
President, Treasurer, and Director and Cynthia A. Taylor as the
company's Secretary.  David K. Rushing is also listed as

employed with "process services" for Bastille.  Furthermore,
Bastille operates as the "legitimate" U.S. entity and transmits
funds and/or securities on behalf of various Defendants through
U.S. financial institutions; including Track Data Securities
Corporation of Brooklyn, New York and JP Morgan Chase, N.A. of
Baton Rouge, Louisiana.

16.    Bayswater, Inc. ("**Bayswater**") is yet another entity
under common control with GISBeX and is used as a nominee for
the registration of securities; or securities in "street name"
or electronic form and which are similarly controlled and traded
by GISBeX.  Roger Coleman operates as the Treasurer and
Secretary of Bayswater and Cynthia A. Taylor as President.
Cynthia A. Taylor is a resident of Nevada and is the Corporate
Secretary of Bastille and President of Bayswater.

17.    Roger G. Coleman is a resident of Nevada and is the
President, Treasurer, and Director of Bastille and the Treasurer
and Corporate Secretary of Bayswater.

18.    Upon information and belief, Irving M. Einhorn,
operates through his law firm incorporated within the State of
California, Irving M. Einhorn, P.C., aka The Law Offices of
Irving M. Einhorn, and is believed to both work and reside at
1710 10th Street, Manhattan Beach, California 90266.  Mr.
Einhorn is the former Regional Administrator of the SEC's Los
Angeles regional office and has previously represented Robin

Rushing and Harold Bailey Gallison, Jr. in their previous disciplinary matters, relating to securities violations within the United States.

## JURISDICTION AND VENUE

19.    Plaintiffs bring this action pursuant to §10(b) of the Securities Exchange Act of 1934 ("**Securities Exchange Act**"), 15 U.S.C. §78(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, §29(b) of the Securities Exchange Act, 15 U.S.C. §78cc, and §20(a) of the Securities Exchange Act, 15 U.S.C. §78t.

20.    This Court has jurisdiction over Defendants and this matter of this action pursuant to 28 U.S.C. §§1331, 1332, and 1367 and Section 27 of the Securities Exchange Act, 15 U.S.C. §78aa.

21.    The Court also maintains jurisdiction pursuant to Fla. Stat. §48.193 as Defendants personally, or though one or more agent(s), (i) operated, conducted, engaged in, or carried on a business or venture in the State of Florida and/or maintained an office in this state, (ii) committed a tortious act within this state, and/or (iii) caused injury to persons or property within the State of Florida by an act or omission outside this state at the time Defendants were engaged in solicitation or services within this state.

22.     Venue is proper in this District pursuant to Section 27 of the Securities Exchange Act and 28 U.S.C. §1391. Substantial acts in furtherance of the alleged unlawful activity and/or its effects have occurred within this District.

23.     In connection with the acts, conduct and other wrongs alleged in this Complaint, the Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mails and interstate telephone communications.

## FACTUAL BACKGROUND

### A.   THE GATEWAY.

24.     As provided, the Moneyline/GISBeX platform is purportedly headquartered in Costa Rica, although markets its services, the purchase and sale of securities, to residents of Canada and the United States.

25.     However, the scope of the Costa Rican operation is believed to be simply a web server and a sham to disguise the true nature of the operation to conduct securities transactions within the U.S.  While a client of Moneyline, such as Plaintiffs were, would access a web portal to initiate trades in securities via the online platform, the crux of the fraud would occur right within the borders of the United States.

26.     Two gateways had been established to operate the service and the primary one operated within the State of

Florida.  Aeropost International Services, Inc. ("**Aeropost**") operated as the link to the brokerage platform by accepting correspondence and stock certificates and thereafter forwarding the same to either Moneyline/GISBeX, or those under common ownership and control and accordingly, and operated as an agent of Moneyline / GISBeX by and through its mail receipt and forwarding services.

27.    Aeropost operates through a series of partners throughout Latin America and the Caribbean to provide logistics services.  Aeropost's services are provided at various locations including 7979 NW 21st Street, Miami, Florida 33122 (the "**Florida Gateway**").

28.    The logistics services, provided by Aeropost, offered Moneyline / GISBeX the ability to receive funds and/or securities, within the State of Florida, and thereafter remit them to the Costa Rican entities and or those under common ownership and control.  Hence, customers, such as Plaintiffs, would be directed to submit account applications, mail stock certificates, and send correspondence to the Aeropost address and thereby provide Moneyline / GISBeX the ability to forward the referenced items to either their domestic or foreign agents.

29.    The second gateway within the United States is provided by the Washington address listed in paragraph 12 of this Second Amended Complaint (the "**Washington Gateway**").  As

the Rushing Defendants operate as the unlicensed agents of Moneyline / GISBeX, a second mailing address was established to accept correspondence, as well as funds and securities, within the State of Washington.

30.    The Washington Gateway is yet another sham and is a mail receipt and forwarding location operating under the name Postal Annex.

31.    Attached hereby as Exhibit "A" is the account application of Plaintiff Jimmy DeMaria.  In relevant part, Page 1 of the application provides that all documentation should be faxed to the U.S. number of (702) 995-0456 with originals mailed to the Florida Gateway; which had occurred on or about June 18, 2008.

32.    Attached hereby as Exhibit "B" is the account application of Plaintiff Carlo DeMaria.  In relevant part, the account application, with similar instructions to send the originals through the Florida Gateway, was sent with a copy redirected to the attention of Robin Rushing at facsimile no. (509) 267-4147 on July 16, 2008.

33.    Exhibits "C", "D", and "E" are similarly provided for the account applications of Messrs. Mauro Marchioni, Giuseppe Demaria, and Municipal Web Portal Solutions, Inc., respectively. Such remaining accounts applications were submitted on June 20, 2008.

34.     The account applications attached as <u>Exhibits "A"</u> <u>through "E"</u> contain numerous misstatements of material facts; including the following:

A. The account applications contain a "US Person Determination", with questions regarding United States residency for purposes of trading in Regulation-S securities (securities issued by U.S. issuers which are traded under an exemption from registration for foreign markets), when in fact Moneyline would reroute such transactions, by and through its control group, into the United States and in violation of such exemption;

B. Similarly, the Agreement for Regulation S Account Activation indicates that "MLB is in the business of providing quotations and an exchange platform allowing for the active trading, in digital form, of Regulation-S securities between non US persons (as defined by Regulation-S) during the Distribution Compliance Period". Such statement is false and misleading since Moneyline simply reroutes such transactions back through U.S. broker-dealers directly and/or through European brokerage firms for resale back into the U.S. markets;

C.  paragraph 3 of the Client Agreement and Disclaimers indicates that "[y]ou further understand that this website is operated in compliance with the laws of the jurisdiction

in which the servers hosting this service are physically located", when such is not true.  In fact, such transactions are re-routed to U.S. markets but, in any event, GISBeX does not have the requisite licensure to legally engage in such transactions even in Costa Rica;

D. paragraph 10 of the Client Agreement and Disclaimers indicates that transactions are conducted through GISBeX, although fails to indicate that GISBeX does not have the capability to legally process such transactions as either a broker or clearing firm;

E. paragraph 13 of the Client Agreement and Disclaimers indicates that a client may withdraw cash from an applicable account at any time upon written request.  Such statement is false as evidenced by the request of Mr. Carlo DeMaria to withdraw seven hundred nine thousand dollars from his respective account and Moneyline / GISBeX's failure to transfer said funds; and, among others,

F. paragraph 22 of the Client Agreement and Disclaimers indicates that a client may withdraw his or her respective securities from an account.  As evidenced by the conversion of Plaintiffs' BRYN shares and refusal to return, such is not accurate.

35.    In relevant part, each of the individual shareholders deposited, on or about the time of their account application

approximately five million shares into each of the separate illusory Moneyline accounts, although followed the instructions provided by Robin Rushing to transfer such holdings to the nominees listed herein.

36.    Attached hereby as Exhibit "F" is an account correspondence on June 24, 2008, providing for instructions to deposit physical stock certificates at the Washington Gateway. Defendants array of ties to the instrumentality of interstate commerce is clearly depicted by the following:

A. a U.S phone number of (509) 326-4253 and U.S. facsimile number of (509) 267-4147;

B. the delivery instructions request that the physical certificates be sent to Sandias Azucaradas at the Washington Gateway and, in fact, the email correspondence originates from office@sandiasazucaradas.com;

C. DTC instructions, or the instructions to deposit stock and register in electronic form are provided and are done so through Penson Financial Services, Inc.; and

D. the deposit of funds is directed towards HSBC Bank USA, N.A., with beneficiary of HSBC Bank (Panama), S.A.; with Sandias Azucaradas as the listed beneficiary.

37.    While the brokerage operation was engineered to minimize contacts within the United States, Plaintiffs have reason to believe that the two gateways may have in fact only

served as the recipient and forwarding locations; the effect of which having the physical stock certificates never leave the continental U.S. and/or be immediately returned back to the states as such would be required to transfer legal ownership and re-register the shares in the nominee names.

B.   THE PARTICIPANTS.

38.   The operators of this brokerage platform have effectively assembled a team of former disciplined stock brokers, transfer agent(s) whose licenses have been revoked, convicted felon(s), and a tenured securities attorney to orchestrate the scam; which scam is believed to have grown to a massive size and has effectively operated underneath the regulatory radar for almost a decade.

39.   On March 28, 1990, Mr. Coleman was indicted, and subsequently plead guilty, on one count of conspiracy to commit securities fraud and to transport counterfeited securities in interstate commerce and on one count of interstate transportation of counterfeited securities.  The SEC also instituted administrative proceedings against Mr. Coleman and his company, Efficient Transfer, Inc., for willfully violating the antifraud and transfer agent provisions of the Securities Exchange Act, falsifying shareholder records, and failing to comply with the record retention and examination requirements.

40.    Harold Bailey Gallison, Jr. is believed, upon information available publicly, including an article entitled "Is notorious brokerage boss Harold Gallison" back in the penny stock game?", made available by www.sharesleuth.com, to be one of the principal operators of Moneyline and is no stranger to securities fraud.  Gallison was barred from association with any member firm in 2004 for violating Sections 17(a) of the Securities Act of 1933 and 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 thereunder.  The SEC found Gallison arranged for the promotion of a penny stock [Golf Ventures, Inc.] in exchange for bribes from one of the company's representatives.  Gallison, former president and supervisor of trading of La Jolla Capital Corporation, a SEC registered broker-dealer, was also barred from association in a principal or supervisory capacity with any member firm in 1999.  Mr. Gallison and the member firm were fined $100,000 each for failing to maintain supervisory procedures and inducing the purchase of highly speculative stock by making unfound claims about the merits of investment and predicting rising stock prices without disclosing the company's [Jutland Enterprises, Inc.'s] questionable financial situation.[3]  Even prior to that,

---

[3] *Securities Exchange Act Release No. 41755* (Aug 18, 1999); finding sustained on grounds that the supervisory system was grossly inadequate and Gallison's and La Jolla's history of supervisory and other violations.

Mr. Gallison and La Jolla Capital were fined more than $400,000 for circumvention of investor protection laws in approximately 140 transactions involving 15 separate securities.[4]  In 2003, Mr. Gallison was sentenced to a five year prison term for securities fraud.

41.    Robin Rushing was formerly sanctioned by the SEC for violations of §15(c)(2) of the Exchange Act and Rule 15c2-11 and was ordered to cease and desist from committing or causing future violations as the law judge found that Robin Rushing and Gallison aided and abetted their firm's violations for continuing to trade a security [Astro Enterprises, Inc.] following the SEC's order of suspension for lack of adequate information and disclosure.

42.    In support of Plaintiff's contentions, the following information has also been uncovered about Mr. Einhorn:

   A. as of December of 2009, Mr. Einhorn was representing both Moneyline and Gisbex and, throughout his representation, he has made verbal and written declarations that, while his clients have no beneficial interest in Plaintiffs' property, such property was not to be returned

---

[4] Financial Industry Regulatory Authority News Release, September, 11, 1997
http://www.finra.org/Newsroom/NewsReleases/1997/P010517
(accessed April 18, 2010).

and further refused to interplead either the funds or
shares into any U.S. District Court, as request by
Plaintiffs;

    B. Einhorn represented La Jolla Capital Corporation and
Harold Bailey Gallison, Jr. *In the Matter of the
Application of La Jolla Capital Corporation and Harold
Bailey Gallison, Jr.*, Securities Exchange Act Release 41755
(Aug. 18, 1999)(upholding a finding barring Gallison from
further association with any member firm and fining
Gallison and La Jolla Capital $100,000.00 each); and

    C. Einhorn also represented Robin Rushing, the former
associate of Mr. Gallison, in her previous disciplinary
matters and in fact was representing both Harold Gallison
and Robin Rushing in the petition for review of a finding
of violation of §15(c)(2) of the Exchange Act.[5]

C.   DEFENDANTS' TRADING PLATFORM.

43.    To perpetrate the scheme, the brokerage platform
utilizes a series of "mirrored accounts" internally and then
operates through legitimate and licensed broker-dealers in the
United States.  While the technology systems used by Moneyline /
GISBeX provides information to their respective clients for
accounting of funds and securities, these accounts are simply an

---

[5] In the Matter of Robin Rushing and Harold "B.J." Gallison,
*Exchange Act Release No. 34-36910*, (Feb. 29, 1996).

illusion and bear no resemblance to reality.  In fact, after receiving securities and transferring them to nominee names, such as Sandias Azucaradas, Bastille, and Bayswater, the securities are deposited and traded through licensed brokerage firms as "proprietary accounts."  Such licensed broker-dealers include E*Trade Securities, LLC, Wilson-Davis & Co., TD Ameritrade, Inc., Terra Nova Financial, LLC, and Penson Financial Services, Inc.

44.    Accordingly, while Plaintiffs would submit verbal trade orders and enter orders through the online platform, and have reason to believe that substantial trading volume did in fact occur, as evidenced by the trading volume on or about the relevant time, Moneyline and/or GISBeX, had the control to truly trade BRYN shares through their nominee accounts.

45.    Defendant's pattern and practice of unlawful activity is evidenced by various correspondence, originating from David Rushing, on behalf of Sandias, Bayswater, and Bastille, and includes the following:

A. In or about November, 2009, David Rushing provides trade confirmations, via electronic mail, for transactions executed between November 20, 2009 to November 23, 2009, and further indicates that Robin was in charge of trading at Moneyline;

20

B. On November 30, 2009, David Rushing provides an "accounting" of Plaintiffs' certificates again through an email communication, after Mr. Marchioni begins inquiry with the growing concern over the Moneyline platform, and then Mr. Rushing even indicates the account closures of several of the Moneyline proprietary accounts at U.S. financial institutions; including TD Ameritrade, Inc., Penson Financial Services, Inc., Terra Nova Financial, LLC, and E*Trade Securities, LLC.

46.     David Rushing, through his various communications, including the electronic message of December 1, 2009, even inadvertently provides information on the methodology used by Moneyline / GISBeX to escape regulatory scrutiny; including the deposit of less than 5% of the outstanding securities of any issuer with a single brokerage firm and the use of European brokerage firms to clear U.S. stocks; which then have the ability to immediately resell back into the U.S. markets.

47.     However, it is apparent from the communication by Mr. Rushing on December 1, 2009, that the scope of the fraud extends well above him as he provides "I have this morning discussed with both compliance and risk management our desire to expedite clearance of the most number of shares of BRYN as quickly as possible, while also intelligently 'playing it smart' to not

cause any compliance and regulatory red flags at any of our corresponding brokerage accounts."

    D.    THE OPERATION, METHOD AND SCOPE.

48.    As provided with the description of the trading platform, the standard practice was to register the certificates in electronic form and in the name of one or more nominees. Such was and is done to mask the trading activity of these shares as reconstruction of the trading patterns requires examination through each respective brokerage firm conducting the trades and cannot be ascertained from the records of the transfer agent.

49.    The use of nominee names became particularly problematic in that, to support the falsehood that these were proprietary accounts, Mr. Coleman was even required to represent the illusion to third parties and even perjurer himself in the ordinary course of business.

50.    Mr. Coleman, on or about September 22, 2009, applied for replacement of lost certificate number 15041, representing 4,000,000 shares of BRYN.  In his application for replacement of the lost certificate, Mr. Coleman indicates, on behalf of Bastille, that (i) the shares were purchased in January of 2009, (ii) that Bastille holds absolute title, and (iii) the loss of the certificate was discovered by Robin M. Rushing.  A copy of

the application for replacement of the lost certificate is attached hereby as Exhibit "G".

51.    As further provided in Exhibit "G", on or about September 22, 2009, Scott Prather of X-Clearing Corp, BRYN's transfer agent, faxed various documentation in process of replacing the certificate to Michael Rushing at (702) 995-0456; thereby again associating yet the third of the Rushings to both the illegal securities business and Plaintiffs' shares.

52.    Further, Moneyline's fraudulent platform is believed to stretch well above and beyond the interaction with the Plaintiffs herein. Operating from the same address as provided in paragraph 12, those in control of GISBeX are believed to be operating an off-shore web-hosting and collocation service, by the name of Sandias Azules Jem, S.A. ("**Sandias Azules**"), for various other services which are also believed to be under their common control and include (i) www.myinternationalbroker.com, (ii)www.evalescotrading.com, (iii) www.quickclickbrokers.com, and (iv) www.successiobrokers.com.

53.    The scope of this operation is believed to even extend beyond the above listed entities and to a Costa Rican operation known as Regulation-S.com, S.A.; an outfit that holds itself out as the "World's Regulation-S Exchange and Marketplace". Plaintiffs base such information on the fact that this entity operates on the exact same server as Sandias Azucaradas and its

supporting sites; which internet protocol address is 200.122.140.200.  Moneyline, Sandias Azules, Evalesco Trading, Quickclick Brokers, and Successio Brokers use a sister internet protocol address, of 200.122.140.199; which operates from the same location.

54.    However, this Costa Rican operation is again simply a web server for the illusory trading platforms; platforms which resembles that of on-line trading platforms provided by traditional, licensed broker-dealers.

E.    Trading Activity

55.    Between approximately March 12, 2009 and December 1, 2009, Plaintiffs either telephoned their orders with the Rushing Defendants or logged onto the illusory trading platform of Moneyline Brokers and requested the execution of numerous trades in BRYN.  While there were approximately 150-200 individual transactions in the BRYN shares, the following trade confirmations, among others, were provided through the Moneyline platform:

A. On March 12, 2009, 5,000 shares were sold at $0.65 for a credit in proceeds of $3,132.28 for Mr. Jimmy DeMaria's account.

B. On March 20, 2009, 7,600 shares were sold at $0.50 for a credit in proceeds of $3,653.72 for Mr. Jimmy DeMaria's account.

C. On May 1, 2009, 10,000 shares were sold at $.49 for a credit in proceeds of $4,487 for Mr. Marchioni's account;

D. On May 28, 2009, 50,000 shares were sold at $0.10 for a credit in proceeds of $4,822.20 for Mr. Carlo DeMaria's account.

E. On November 9, 2009, 10,000 shares were sold at $0.109 for a credit in proceeds of $1,029.92 for Mr. Carlo DeMaria's account.

F. On November 17, 2009, 5,000 shares were sold at $0.32 for a credit in proceeds of $1,475.89 for Mr. Marchioni's account.

56.    As indicated, the Moneyline / GISBeX platform resembles that of the website operated by licensed brokerage firms and, as such, misleads clients of Moneyline Brokers, such as Plaintiffs were, to believe that the services performed are lawful and that Moneyline Brokers has the requisite licensure to operate the online trading platform.

F.    UNFOLDING OF THE SCHEME.

57.    As can be commonly found in any fraudulent scheme, trouble lurks when the demand for property arises.  The present matter is no exception and, upon realizing the amount at stake, Moneyline / GISBeX and/or those under common ownership and control took the opportunity to convert the funds and securities for their personal gain.  Such conversion included an aggregate

25

of approximately one million five hundred thousand dollars in sale proceeds and approximately thirteen million three hundred fifty thousand shares of the common stock of BRYN; including that of (i) five hundred twenty nine thousand dollars in Mr. Marchioni's account, (ii) seven hundred ten thousand dollars in Mr. Carlo DeMaria's account, (iii) four million nine hundred fifty thousand BRYN shares in both Municipal Web Portal Solutions, Inc.'s and Guisepee DeMaria's accounts, (iv) nine hundred fifty thousand BRYN shares in Jimmy DeMaria's account, (v) one million eight hundred thousand BRYN shares in Mauro Marchioni's account, (vi) and seven hundred thousand BRYN shares in Carlo DeMaria's account.

58.     On or about December 4, 2009, Mr. Carlo DeMaria, having become suspicious of the nature of the brokerage services, elected to withdraw seven hundred nine thousand dollars in sale proceeds from his respective account.  On January 6, 2010, an electronic mail confirmation was sent to Carlo DeMaria and provided that "Client Services, Moneyline Brokers - Member of GISBeX" was wire-transferring the funds to his requested bank account.  However, no transfer was ever initiated he has yet to receive his funds.  Mr. DeMaria then telephoned Ms. Robin Rushing several times on or about such time; first to be assured that the transaction would be processed, then that the transaction would need to be processed

in increments, and then finally, without ever receiving his funds, his calls to Robin were no longer being answered.

59.   When Plaintiffs' suspicion grew with both the content of the communications from David Rushing and the delays in receipt of their property, and the lack of a response from Robin Rushing, Plaintiffs initiated a series of demands between December of 2009 and January of 2010; only to find that their personal accounts with Moneyline / GISBeX had been deactivated.

60.   In order to deter Plaintiff's attention from the scheme, a plan was devised to redirect attention from the unlawful brokerage platform and the conversion occurring and such plan relied on Mr. Einhorn to threaten Plaintiffs with referral to the SEC; the same agency Mr. Einhorn has had deep seated roots and has developed personal connections within over the years.

G.   LOCATION OF PLAINTIFFS' PROPERTY.

61.   While Plaintiffs are unsure as to the present location of their property as such has been converted, upon information and belief, Bastille still retains 6,550,000 of the BRYN shares and Bayswater 5,200,000.  Moreover, upon information presented from a third party source believed to have been formerly associated with Defendants, six hundred thousand dollars is believed to have been fraudulently transferred to Multibank, Inc., in the Republic of Panama, and has been frozen in the bank

account of a Michael Randles; a Costa Rican also believed to be one of the primary operators of GISBeX and Regulation-S.net.

### COUNT I
### VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT AND RULE 10B-5
### (15 U.S.C. §78(b), 17 C.F.R. §240.10b-5)

62.     Plaintiffs hereby incorporate paragraphs 1 through 61 herein the same as if such were repeated in full.

63.     Defendants Gisbex, Moneyline, David, Michael, and Robin Rushing, jointly and severally, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange, have used or employed, in connection with the purchase or sale of any security, (a) devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made not misleading in light of the circumstances under which they were made; or (c) engaged in acts, practices, and a course of conduct which operated as a fraud and deceit upon the Plaintiffs.

### (Against Defendants Robin Rushing, David Rushing, and Michael Rushing)

64.     Defendants David, Michael, and Robin Rushing functioned as the unregistered securities sales agents of Moneyline and as such, engaged in employment in connection with

the purchase and/or sale of securities in violation of §10(b) of the Securities Exchange Act.

65.     In engaging in the employment with Moneyline, David, Michael, and Robin Rushing omitted to state, at the time of Plaintiffs' account applications and/or prior to the acceptance of Plaintiffs' orders to sell securities and with the confirmations of those sales, the fact (i) that neither Moneyline nor GISBeX were registered as a broker-dealer with the SEC, (ii) that GISBeX was not registered in Costa Rica to provide clearing or brokerage services in connection with the purchase and/or sale of securities, (iii) that the associated personnel, including David, Michael, and Robin Rushing, were not licensed to function as sales agents in the purchase and/or sale of securities in either jurisdiction (iv) that the fraudulent trading platform in use would reroute transactions through the designated nominees, through licensed broker-dealers, and trade such in the United States in violation of the Securities Exchange Act, and (v) that the trading platform would later be used as the device to convert Plaintiffs' BRYN shares and proceeds from sale.  Further, affirmative misstatements were made that Moneyline could process such transactions.  The referenced communications included the following:

A.     Between July through December of 2008, Robin Rushing communicated, via telephone, with Jimmy DeMaria and

Mauro Marchioni; during the course of the account openings. Representations were made that Moneyline could handle transactions in securities, including issuers quoted on the over the counter market known as PinkSheets, and instructions were provided in connection with the account applications and deposit of securities.

B.     Between February 2009 through May 2009, various communications, via telephone, were made between Jimmy Demaria and Robin Rushing.  Such communications involved trade orders as such orders could be and were executed either through the on-line web portal and/or directly by telephone.

C.     Between May 2009 through December 2009, various communications, via telephone, were made between Carlo DeMaria and Robin Rushing.  Such communications involved trade orders as such orders could be and were executed either through the on-line web portal and/or directly by telephone.

D.     Between the February through December 2009 time period, David Rushing and Michael Rushing would assist in the trade processing / accepting verbal trade orders, when Robin was unavailable, and the providing of account trading confirmations.

E.      Between November through December 2009, a dispute
arose as to a delayed trade confirmation and communications
were made, via telephone and electronic mail, by and
between David Rushing, Michael Rushing, and Mauro
Marchioni.  In relevant part, David and Michael assisted
with the trade processing and monetary credit following
delayed execution of an order entered.

66.    During such referenced communications, misstatements
and omissions were made with scienter as David, Michael, and
Robin Rushing knew, or were severely reckless in not knowing,
that registration as a broker-dealer for Moneyline and GISBeX
with the SEC would be required and, that as associated personnel
of an unincorporated entity, that they themselves would have to
be registered as broker-dealers and/or seek registration under
another licensed broker-dealer.

67.    In fact, Ms. Rushing had formerly been employed as a
registered representative with U.S. brokerage firms (i) World
Trade Financial Corporation of San Diego, California, (ii)
Capital International Securities Group, Inc. of Miami, Florida,
and (iii) La Jolla Capital Corporation of San Diego, California.
However, Ms. Rushing no longer maintains her licenses to conduct
transactions in securities and has not been registered since
1998.

68.    David Rushing was also aware of the manner and method upon which Moneyline / GISBeX conducted such operations and the lack of requisite licensing and procedural controls; as evidenced by his email communications to Mauro Marchioni between November 30, 2009 and December 1, 2009 (indicating the rerouting of transactions back to U.S. broker-dealers and methods upon which to evade regulatory scrutiny).

69.    Such misstatements and omissions proximately caused Plaintiffs' loss as registration with the SEC requires the implementation of certain controls over a clients' funds and securities and such measures exist to guard against the precise type of loss sustained by Plaintiffs; namely the conversion of Plaintiff's shares and the proceeds from prior sales (cash balances within their respective accounts).  If Plaintiffs were made aware that the Moneyline platform was a simply a series of mirrored accounts and a fraud and that their funds and securities were at risk, they would have not deposited their securities with Moneyline Brokers, transferred their certificates to the nominees listed herein, nor entered into the sales transactions referenced herein for the BRYN shares.

70.    Further, in soliciting such brokerage services, David, Michael, and Robin Rushing failed to disclose the prior regulatory histories and/or criminal histories of Robin Rushing,

Roger G. Coleman, and Harold Bailey Gallison, Jr.; affiliates of the Moneyline platform.

71.     Disclosure of regulatory and criminal histories of those engaging in securities transactions within the United States is required and further, regulatory controls may bar such unscrupulous individuals from affiliation with a securities firm to guard the investing public.

72.     Such is an omission of material fact and proximately caused Plaintiffs' loss as (i) such individuals are unlikely to obtain licensure to transact in securities in the United States and (ii) the conversion that occurred appears to be directly related to and proximately caused by the individuals who have a history of securities violations.  If Plaintiffs were made aware of such regulatory and criminal histories of the associated personnel of GIXBeX / Moneyline, they would have not deposited their securities with Moneyline Brokers, transferred their certificates to the nominees listed herein, nor entered into the sales transactions referenced herein for the BRYN shares.

73.     Plaintiffs reasonably relied on the misstatements and omissions which led to their loss.  Plaintiffs understood that they were depositing their BRYN shares with a legitimate trading operation and assumed that appropriate regulatory controls would have been in place to guard their property; as exist for licensed securities brokerage firms.  In particular, the use of

account applications, online password protected account access, and, among others, personnel to assist in trade processing and compliance services all led the Plaintiffs to believe that Moneyline platform was legitimate, which it is not.

74.     Further, in engaging in the employment with Moneyline, David, Michael, and Robin Rushing engaged in a device, scheme or artifice to defraud and/or engaged in acts, practices, and a course of conduct which operated as a fraud and deceit in violation of §10(b) of the Exchange Act.

75.     Even in the absence of any material misstatement or omission, employment in connection with the purchase or sale of a security must be undertaken in connection with a registered broker-dealer and a failure of which is a violation of §10(b) of the Exchange Act as such is a manipulative or deceptive device or contrivance and is in direct violation of the of the rules and regulations proscribed by the SEC.  Accordingly, even if full disclosure of a failure to register as a broker-dealer was made, which it was not, Plaintiffs request that this Court make a finding that such is actionable pursuant to Rule 10b-5 as such amounts to an agreement to knowingly engage in prohibited transactions in violation of §10(b).

76.     Finally, Robin Rushing individually engaged in an additional scheme and artiface to defraud.  In part, she provided instructions to Plaintiffs, in connection with their

account openings and deposit of BRYN shares between May through December of 2008, to deposit their shares in the nominee names of Bayswater, Bastille, and Sandias Azucaradas.

77.     Such was a scheme and artifice to defraud as such transfer facilitated the ability for Moneyline and GISBeX, as well as those individuals and entities under their control, to violate the Securities Exchange Act by trading the Shares in the United States.  Moreover, such was done, upon information and belief, to facilitate the trading of Plaintiffs' shares without their discretion, or short-selling, and/or the conversion that was about to occur.

78.     By and through the implementation of an artifice or scheme to defraud and through the misstatements and omissions referenced herein, the Rushing Defendants were presented with the opportunity to collect commissions, indirectly, for the consummation of sales of the BRYN shares, in violation of §15 of the Exchange Act, and/or were presented with the direct opportunity to convert Plaintiffs' 24,700,000 shares of BRYN common stock and/or the proceeds from sale of approximately ten million of those shares.  Upon information and belief, as provided by the online account portals, the Rushing Defendants were participants in the conversion of approximately one million five hundred thousand dollars of sale proceeds and thirteen million shares of BRYN common stock.

79.    The Rushing Defendants were conscious that their behavior was not lawful as, in particular, Robin Rushing was formerly a representative of U.S. brokerage firms and has previously been found to have violated §15 of the Securities Exchange Act.  In any event, the consummation of such transactions and instructions provided to facilitate the deposit of BRYN shares into the nominees accounts is severely reckless and a display of the strong inference of the Rushing Defendants fraudulent intent to (i) consummate unlawful transactions in securities within the United States and (ii) convert Plaintiffs' BRYN shares and the proceeds from sale thereof.

80.    Moreover, David Rushing's email correspondence of November 30 through December 1, 2009 again raises a strong inference that the Moneyline platform was unlawful in the manner in which it was structured; as evidenced by reference to the use of U.S. brokerage accounts and protocols to evade scrutiny in the United States.

81.    By and through the receipt of commissions to transact in the unlawful sales and the conversion which occurred, the Rushing Defendants are believed to have personally benefitted from the commission of the fraud.  As a result of such fraud, Moneyline and GISBeX obtained approximately one million five hundred thousand dollars in sale proceeds of BRYN shares and approximately thirteen million shares of BRYN common stock and

the Rushing Defendants are believed to have been allocated a portion of the same for their direct participation in the fraud.

**(Against Defendants Moneyline Brokers and GISBeX Clearing Corporation, S.A)**

82.   Defendants Moneyline and GISBeX were the unregistered securities brokers that affected the sale of the BRYN shares for Plaintiffs.

83.   By and through their course of conduct, including that of the use of forms for account applications and online password protected brokerage account access, Moneyline and GISBeX violated §10(b) of the Securities Exchange Act as they constructively misrepresented the fact that these entities could engage in transactions involving the purchase and/or sale of securities and permitted their associated personnel to misrepresent to the investing public that securities transactions could be performed; which they could not lawfully do.

84.   Such misstatements and/or omissions included the posting of transaction fees and capabilities of the firms, such as the form attached hereby as Exhibit "H", to consummate transactions in securities.  The transactional fee schedule, among the other pages on the website, is misleading as Moneyline does not disclose that (i) it is not lawfully permitted to collect fees in securities transactions in either the United

States or Costa Rica, and (ii) does not qualify such written statement with disclosure that the provision of such services is unlawful and in direct violation of the Securities Exchange Act and rules promulgated thereunder, including Rule 10b-5. However, even if such disclosure was made, which it was not, Plaintiffs' similarly request that a finding be made that such is actionable pursuant to §10b-5 as such would involve the consummation of prohibited transactions pursuant to §10(b).

85.    The failure to disclose that Moneyline and GISBeX were not registered with the U.S Securities and Exchange Commission or even the Superintendencia General de Valores al Servicio Del Inversionista (of Costa Rica) is a material omission of fact as the disclosure of which would likely affect a reasonable investor and would have alerted Plaintiffs not to deposit their personal property with Moneyline and its' nominees and would have likely prevented Plaintiffs from engaging in the trades in the BRYN shares; particularly through such fraudulent platform.

86.    Moreover, Plaintiffs' reliance can be presumed as the constructive misrepresentation created by operation of an online brokerage platform, with illusory accounts and formal applications for opening such accounts, is material and would have prevented a reasonable person from depositing their securities with such unlicensed agents and subsequently submitting written and verbal requests to execute transactions

in those securities.  However, in any event, Plaintiffs in fact reasonably relied on Ms. Rushings' affirmative statement that she, as an agent of Moneyline / GISBeX and through the Moneyline / GISBeX platform, could consummate the sale of BRYN shares for Plaintiffs as well as the affirmative statement and transaction schedule posted on the Moneyline website.

87.    Plaintiff's reliance was reasonable as, by and through the operation of a service entitled "Moneyline Brokers" and creation of documentation and websites customary with standard, licensed online brokerage platforms, Moneyline created the illusion that it could in fact engage in securities transactions.

88.    Moreover, the loss sustained by Plaintiffs is proximately caused by Moneyline's failure to register as a broker-dealer.  If licensed, regulatory controls would have been implemented to prevent the conversion of Plaintiffs' funds and securities and further, a licensed broker-dealer would have been required to maintain insurance to guard against the precise type of loss sustained by Plaintiffs (such as that provided by the Securities Investor Protection Corporation or SIPC to customers of licensed U.S. brokerage firms).   In any event, had Plaintiffs been informed of such failure to register and the regulatory and criminal histories of Moneyline's associated personnel, they would not have deposited their BRYN shares in

the Moneyline platform, transferred the shares to the nominees, nor consummated the sale transactions as they had.

89.     Defendants Moneyline and GISBeX also violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder as, after conducting the transactions through the nominee accounts referenced herein, Moneyline and GISBeX converted the proceeds of sale.  Plaintiffs request that the Court find that such conversion, even in the absence of any misstatement or omission, is also actionable pursuant to §10b-5, as such was a scheme or artiface to defraud and made in connection with the sale of a security.

90.     In perpetration of this fraud and by and through the use of the misstatements and omissions referenced herein, Moneyline and GISBeX demonstrated a conscious disregard for U.S. securities laws, devised a scheme to convert Plaintiffs' BRYN shares and the proceeds from sale thereof, and hence, have demonstrated a strong inference of fraudulent intent.  As a result of such fraud, Moneyline and GISBeX obtained approximately one million five hundred thousand dollars in sale proceeds of BRYN shares and approximately thirteen million shares of BRYN common stock, less any consideration passed on to those participants who help consummate the scheme.

COUNT II
## VIOLATION OF SECTION 29(b) OF THE SECURITIES EXCHANGE ACT
## (15 U.S.C. §78cc)

### (Against Defendants Moneyline Brokers and GISBeX)

91.    Plaintiffs hereby incorporate paragraphs 1 through 90 herein the same as if such were repeated in full.

92.    As Defendants Moneyline and Gisbex were collectively providing a service, the purchase and/or sale of securities within the United States without registration under Section 15 of the Exchange Act with the SEC as a broker-dealer, any transactions performed per the unlawful contracts are voidable as a matter of law.

93.    The contracts to provide brokerage services, as provided by the account applications attached as Exhibits "A" to "E", are unlawful as the purchase and/or sale of securities for a third party requires registration within the United States as a broker-dealer and Moneyline and GISBeX violated such as neither was registered with the SEC, but yet consummated sales of Plaintiffs' BRYN shares.

94.    Plaintiffs were in contractual privity with Moneyline and GISBeX and the two entities engaged in prohibited transactions by the sale of the Plaintiffs' BRYN shares.

95.    Pursuant to 15 U.S.C. §78cc, Plaintiffs are entitled to rescind the contracts and the transactions made pursuant to those unlawful contracts as the contracts were unlawful and

involved prohibited transactions under the Securities Exchange
Act and were in fact performed in violation of the Securities
Exchange Act.

96.     Further, §15 of the Securities Exchange Act was
implemented to guard against such activity and Plaintiffs are a
class of person(s) that the securities acts were designed to
protect.  In particular, registration with the SEC requires that
the associated person(s) qualifications and fitness be reviewed
to transact in securities and then also, by way of membership
with an exchange or the Financial Industry Regulatory Authority,
to implement reporting and controls to safeguard customers'
funds and securities.  By failing to register, Moneyline and
GISBeX engaged in prohibited transactions within the purview of
§29(b) and Plaintiffs, as sellers of securities and through the
use of such unregistered agents, are permitted to rescind those
transactions.

97.     Moreover, as GISBeX was not even licensed to provide
such services in Costa Rica, as it was not registered with the
Superintendencia General de Valores al Servicio Del
Inversionista (of Costa Rica), the agreements to provide
brokerage and clearing services are unlawful under either
jurisdiction's laws.

98.     As such, Plaintiffs request that this Court find that
Moneyline and GISBeX violated §15 of the Exchange Act and, as

42

such is a valid basis to proceed to rescind the contracts and the  prohibited transactions at issue, hold that Plaintiffs may recover their stock from Moneyline, GISBeX, and/or such nominees as are under common ownership and control of the aforementioned entities and/or order the return of Plaintiffs' property which has been fraudulently transferred to third parties or, alternatively, that Moneyline and GISBeX be held liable for rescissory damages, the costs of this suit, and such further relief as this Court deems just and proper.

99.    Plaintiffs, in addition to rescission of the prohibited transactions and, where such is not possible, recissory damages, also seek rescission of the contracts entered into with Moneyline and GISBeX to work as selling agents.

100.    With respect to any sales commissions received or retained by Moneyline, GISBeX, and/or their associated personnel, such as the Rushing Defendants, Plaintiffs request the return of any fees or commissions paid in connection with the sale of the BRYN Shares as such were prohibited transactions and done so under the unlawful contracts to provide brokerage services.

## COUNT III
## VIOLATION OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT
## (15 U.S.C. §78t)

### (Against Defendants GISBeX Clearing Corporation S.A, Moneyline Brokers, and Harold Bailey Gallison, Jr.)

101.    Plaintiffs hereby incorporate paragraphs 1 through 100 herein the same as if such were repeated in full.

102.    Pursuant to §20(a) of the Exchange Act, every person who, directly or indirectly, controls any person liable under any provision of this title or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

103.    By virtue of the employment of the Rushing Defendants, Defendants Moneyline and GISBeX had the power to influence and control and did influence or control, directly or indirectly, the operations of Moneyline and its associated personnel.

104.    In relevant part, a licensed broker-dealer has a duty to implement a supervisory control system to monitor the activities of its associated personnel; supervision which includes controls to assure honesty and fair dealing with the investing public.

105.   Moneyline and GISBeX were "control person(s)" within the meaning of §20(a) of the Exchange Act as Moneyline was the unincorporated association employing David, Michael, and Robin Rushing, and GISBeX was providing the "brokerage platform" through which the trading in the BRYN shares was consummated.

106.   As David, Michael, and Robin Rushing had direct contact with the investing public, Moneyline, as their employer, had a duty to supervise their activities.  GISBeX, as the provider of the "brokerage platform" had a duty to assure that the statements made through the online web portal, for use by Moneyline and its associated personnel, were not false or misleading.

107.   As a direct and proximate cause of Moneyline's failure to supervise its personnel, David, Michael, and Robin Rushing violated §10(b) of the Securities Exchange Act by and through their material misstatements and omissions of material facts, collection of commissions where they were not licensed to engage in securities transactions, and subsequent conversion in connection with the sale of a Plaintiffs' securities.

108.   As a direct and proximate cause of GISBeX's failure to register and their use of misleading materials prepared to facilitate the trading of securities, GIXBeX violated §20(a) of the Exchange Act.

## COUNT IV
### FRAUDULENT TRANSACTIONS IN CONNECTION WITH THE OFFER, SALE, OR PURCHASE OF A SECURITY
### (Fla. Stat. §517.301)

109.    Plaintiffs hereby incorporate paragraphs 1 through 108 herein the same as if such were repeated in full.

110.    Defendants, in connection with the offer, sale, or purchase of any investment or security have, directly or indirectly, (i) employed a device, scheme, or artiface to defraud, (ii) obtained money or property by means of an untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (iii) engaged in transactions, practices, or courses of conduct which operated as a fraud or deceit upon Plaintiffs.

111.    As indicated herein, Moneyline / GISBeX have been operating an unlawful securities brokerage platform which utilized illusory trading accounts and which securities are deposited in the State of Florida and then traded through brokerage firms in the United States.

112.    The Rushing Defendants would operate as the unlicensed personnel of Moneyline and thereby accept orders and provide trade confirmations for sale in the BRYN shares and each of the Rushing Defendants did so between March through December of 2009.

113.    By use of the Florida Gateway, Moneyline and GISBeX have subjected themselves to regulation under the state laws of Florida and have violated the same by and through their (i) failure to register Moneyline and/or GISBeX as a broker dealer within the State of Florida, (ii) use of unregistered sales personnel to consummate transactions in the BRYN shares, including the Rushing Defendants, and (iii) then the misappropriation and conversion of Plaintiffs' funds and securities.

114.    Such conduct was done in connection with the sale of a security as the mailing of the application documents and/or deposit of securities in an office within the State of Florida was done for the purpose of trading those securities; such as that which occurred in connection with Plaintiffs' opening of their respective accounts.

115.    In any event, the misstatements referenced herein that Moneyline and GISBeX could transact in such securities and the constructive misrepresentation provided by the maintaining of online web portals for account trading and account applications were either material misstatements of fact and/or were material omissions as Moneyline / GISBeX could not lawfully engage in such transactions nor could the Rushing Defendants act as the sales agents in consummating such transactions.

116.    Plaintiffs relied to their detriment and have suffered a loss of approximately one million five hundred thousand dollars and thirteen million shares of their BRYN common stock. In relevant part, Plaintiffs would not have deposited their stock with Moneyline Brokers, transferred their securities to the nominees as instructed, nor engaged in the sale of those securities through Moneyline Brokers had they been informed that their funds and securities were at risk and such platform associated personnel with regulatory and criminal histories in their prior securities' dealings.

### COUNT V
### FAILURE TO REGISTER DEALERS AND/OR ASSOCIATED PERSONS FOR THE SALE OF SECURITIES
### (Fla. Stat. §517.12)

117.    Plaintiffs hereby incorporate paragraphs 1 through 116 herein the same as if such were repeated in full.

118.    By and through the conduct alleged herein, Defendants, jointly and severally, directly or indirectly, have violated the laws of the state of Florida as they have sold or offered to sell securities from offices in the State of Florida or sold securities to persons in this State from offices outside the State of Florida, by mail or otherwise, as Defendants have not registered as dealers and/or associated person(s) to sell securities pursuant to Fla. Stat. §517.12.

119.    In  particular, by and through the use of the Florida
Gateway, Moneyline and GISBeX have violated the laws of the
State of Florida as the use of an office in this state requires
registration to transact in securities.  By depositing their
Shares at the Florida gateway for the purpose of transacting
those securities, and Robin Rushing's instructions to do the
same, Defendants have violated §517.12.

120.    Moreover, by transacting in the BRYN shares from
offices outside the State, the Rushing Defendants, having failed
to register as associated personnel in the State of Florida,
have also violated §517.12 by and through their acceptance of
trade orders and provision of trading confirmations for the
sales of securities deposited at the Florida Gateway.

121.    As such Defendants have violated Fla. Stat. §517.12 &
§517.301, and each person making the sale and every director,
officer, partner, or agent of Defendants, including all
Defendants named in the present action, is jointly and severally
liable to Plaintiffs in accordance with Fla. Stat. §517.211.

## COUNT VI
## UNJUST ENRICHMENT

122.    Plaintiffs hereby incorporate paragraphs 1 through 121
herein the same as if such were repeated in full.

123.    Defendants GISBex, Moneyline, and David, Michael, and
Robin Rushing, by accepting fees and/or commissions for the

purchase and/or sale of securities in violation of both state and federal law, have been unjustly enriched by any fees and/or commissions paid by Plaintiffs in the sale of the BRYN shares.

124.    Moneyline Brokers and GISBeX, which were not licensed as securities brokers within the United States, entered into a series of illegal contracts with Plaintiffs for the purchase and/or sale of securities.

125.    The Rushing Defendants, which were not licensed as either securities brokers or associated persons thereof, are believed to have received compensation or other consideration from the sale of Plaintiffs' BRYN shares and are therefore unjustly enriched as they were not registered as personnel to perform such transactions.

126.    The contracts entered into for the transactions in securities, attached as Exhibits "A" - "E" are illegal and enforceable and therefore, no legal contract exists between the parties.

127.    As such, Defendants are unjustly enriched to the extent that any benefit or right was acquired through their unlawful activity and Plaintiffs request the return of any consideration paid or given to such Defendants.

## COUNT VII
## REPLEVIN

128.    Plaintiffs hereby incorporate paragraphs 1 through 127 herein the same as if such were repeated in full.

129.    Plaintiffs, as the full and unqualified owners of the approximately thirteen million shares of BRYN are entitled to present possession of their respective property.

130.    Defendants Moneyline Brokers and GISBeX, as well as those under common ownership and control, have wrongfully detained possession of the BRYN shares from Plaintiffs. Accordingly, Plaintiffs are entitled to an order from this Court for the return of their respective property or, to the extent not capable of being identified, damages for such loss in an amount to be determined at trial.

## COUNT VIII
## CONVERSION

131.    Plaintiffs hereby incorporate paragraphs 1 through 130 herein the same as if such were repeated in full.

132.    Defendants' Moneyline Brokers and GISBeX, as well as those under common ownership and control, retention of Plaintiffs' funds and securities, and refusal to return upon Plaintiffs' request, amounts to an unlawful conversion of Plaintiffs' property.

133.    Accordingly, Plaintiffs are entitled to an order of return of their BRYN shares and the proceeds from sale and, to

the extent that such cannot be found, damages for such loss in amount to be determined at trial.

## COUNT IX
## COMMON LAW FRAUD

134.   Plaintiffs hereby incorporate paragraphs 1 through 133 the same as if such were repeated in full.

135.   As Defendants have engaged in a series of false statements and/or omissions to state the truth that Moneyline and GISBeX are not registered as broker-dealers in the United States, that the associated personnel does not have the requisite licensure to engage in securities transactions and of their prior criminal and regulatory histories, and further that Defendants intended to convert Plaintiffs' property for their own personal gain, Defendants have defrauded Plaintiffs.

136.   Plaintiffs reasonably relied that Defendants were licensed and lawfully operating a lawful business when their securities were deposited and accounts respectively opened and have since suffered damages due to Defendants' conversion of Plaintiffs' personal property.

## PUNITIVE DAMAGES

137.   As Defendants engaged in a course of conduct that Defendants had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage would result and, despite that knowledge, intentionally pursued that

course of conduct resulting in injury or damage to Plaintiffs,
Plaintiff are entitled to an award of punitive damages.

Wherefore, Plaintiffs pray for relief and judgment as follows:

1.    Issuance of a Writ of Replevin for the BRYN shares
described herein and or, if it cannot be found, for damages and
costs in amount to be determined at trial;

2.    Awarding Plaintiffs a judgment in the amount of one
million four hundred sixty-six thousand dollars three hundred
eighty-eight dollars and ten cents for the funds converted from
Plaintiffs' accounts;

3.    Ordering the rescission of the contracts entered into
between the parties and the prohibited transactions entered
therein and, to the extent that Plaintiffs' BRYN shares cannot
be returned, recissory damages;

4.    Awarding the rescission of any fees or commissions
obtained by Defendants in effecting the sale of the BRYN
securities;

5.    Awarding Plaintiffs reasonable costs and expenses
incurred in this action, including attorneys' fees;

6.    Awarding Plaintiffs the legal rate of interest from
the dates of sale of the securities; and

7.    Awarding such other and further relief as this Court
deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury.


Respectfully submitted this 16th day of December, 2010.


/s/ Michael Stegawski_____
Michael Stegawski, Esq.
Florida Bar No. 51589
Convergent Advisory Services, P.A.
5200 NW 33rd Avenue, Suite 207
Fort Lauderdale, FL 33309
Tel: (866) 439-4942
Fax: (866) 927-1674
Email: michael@globalsecuritieslaw.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No. 10-20426-CIV-GRAHAM/TORRES


CARLO DEMARIA, JIMMY DEMARIA,
MAURO MARCHIONI, et al.,

     Plaintiffs,

vs.

GISBEX CLEARING CORPORATION,
S.A., et al.,

     Defendants.

_____

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of December, 2010, I electronically filed the within and foregoing with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.


                    /s/ Michael Stegawski _____
                    Michael Stegawski, Esq.

**SERVICE LIST**
**Demaria, et al. v. Gisbex Clearing Corporation, S.A., et al.**
**Case No. 1:10-cv-20426-DLG**
**United States District Court, Southern District of Florida**

Joseph W. Beasley
Attorney Email: jbeasley@beasleydemos.com
Beasley & Demos, LLC
2950 S.W. 27th Ave., Suite 100
Miami, FL 33133
Tel: (305) 669-3131
Fax: (786) 360-5924